**In re Francis J. DeMONTE, a Witness Before the Special September 1981 Grand Jury.**

**Appeal of Francis J. DeMONTE.**

**No. 82–1301.**

United States Court of Appeals, Seventh Circuit.

Submitted March 22, 1982.

Decided March 24, 1982.

Louis Carbonaro, Jerome Rotenberg, Rosenfeld, Rotenberg, Schwartzman, Hafron & Shapiro, Chicago, Ill., for appellant.

Judith F. Dobkin, Chicago Strike Force, Chicago, Ill., for appellee.

Before SPRECHER, BAUER and CUDAHY, Circuit Judges.

PER CURIAM.

This is an appeal from an order of the district court that adjudged the appellant, a recalcitrant grand jury witness, in civil contempt. For the reasons stated below, we affirm.

The appellant, Francis J. DeMonte, is a grand jury witness who has repeatedly refused to testify, claiming that the government's questions are derived from illegal electronic surveillance and thus barred by 18 U.S.C. § 2515.[1]

Following the appellant's initial recalcitrance, the government filed a petition for contempt in district court. At the contempt hearing, the government presented an affidavit admitting that DeMonte had been the subject of electronic surveillance but stating that all interceptions of his communications had been authorized by court order. The government also submitted cer-

---

1. Section 2515 provides in part:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any ... proceeding .. before any ... grand jury . . if the disclosure of that information would be in violation of this chapter.

tain documents to support its claim. After making an *in camera* review of those documents, the district court concluded that the surveillance had been performed in accordance with court orders and rejected the wiretap objection as a basis for the appellant's refusal to testify. The court then entered a contempt order committing the appellant to custody. DeMonte appealed to this court from that order.

On December 10, 1981, we vacated the initial contempt order on the ground that the appellant should have been given "limited access" to the documents presented by the government at the contempt hearing. *In re DeMonte*, 667 F.2d 590 (7th Cir. 1981). We remanded the case to the district court for further proceedings in accordance with guidelines set forth in our opinion. *Id.* at 599.

On January 25 and January 26, 1982, the district court conducted an additional hearing. Under a protective order entered by the court, the appellant was given access to: (1) authorizing court orders; (2) applications for the orders; (3) approvals of the Assistant Attorney General; (4) orders of the Attorney General, specifically designating the Assistant Attorney General to act; and (5) affidavits in support of the applications. Certain portions of the affidavits were excised.

Following that access, the appellant renewed his challenge to the legality of the surveillance. The court rejected his arguments and reaffirmed its prior determinations that the wiretaps had been legal and that the appellant was required to testify. Upon the appellant's indication that he would not comply, the court reimposed the contempt order and committed the appellant to custody. DeMonte now appeals from this second contempt order.

Essentially, the appellant raises two types of objections: (1) he contends that the procedure employed by the district court on remand did not conform to the standards outlined in our prior opinion; and (2) he reasserts that the wiretap authorizations and the resultant interceptions were not lawful.

## I

In *In re DeMonte, supra*, we adopted the following framework as a means for developing cases when a grand jury witness makes a "wiretap" objection and the government admits the fact of surveillance:

(1) Presumptively, the witness should be given an opportunity to inspect these limited materials: the authorized application of the Attorney General or his designate, the affidavits in support of the order, the court order itself, and an affidavit submitted by the government indicating the length of time the surveillance was conducted. (2) If, however, the government interposes an objection on secrecy grounds, the district court must determine whether the secret information can be deleted or summarized. (3) If the court determines that the objection can be circumvented, access should be granted. (4) If, however, the court, in its discretion, determines that any access would prejudice the government, it can deny access, but it then must review the material *in camera* to determine the constitutional and statutory validity of the surveillance.

*Id.* at 598. We emphasized that this approach vests the district court with wide discretion. *Id.*

## A

■ Initially the appellant urges that the district court abused its discretion by failing to require the government to file an affidavit stating the length of time the surveillance was conducted. We cannot agree. Although on remand the district court did not require the government to submit a formal affidavit, a review of the hearing transcript reveals that the court elicited a statement on the record from the government attorney who conducted the investigation that the surveillance had been limited to the periods authorized in the original court orders. That represents compliance with the substance of our direction that the witness be given an opportunity to inspect "an affidavit submitted by the government

indicating the length of time the surveillance was conducted." *In re DeMonte*, 667 F.2d at 598.

An affidavit of this type is not required by the authorizing statute nor was it mandated by the original court orders in this case. We referred to it in our outline in *In re DeMonte* to guarantee that the court and the witness would receive confirmation that the surveillance was not conducted outside of the authorized time periods. In this case such confirmation was given during the hearing. An affidavit restating that information would have been of no additional value. Thus the court did not abuse its discretion by not requiring a formal submission.[2]

## B

The appellant next claims that the district court abused its discretion by approving deletions from the documents given him without requiring the government to establish a sufficient secrecy objection. To answer this question, we must briefly recount the procedure used by the court on remand.

At the hearing on January 25, 1982, the appellant requested access to the information outlined in our prior opinion. The government provided the appellant with copies of the relevant documents. The affidavits, however, had certain portions excised. The appellant objected, claiming that there is a presumption that he be given access to unabridged documents. At this point the court tentatively approved the deletions and advised the appellant to examine the documents as submitted.

At the hearing on January 26, the appellant reasserted his claim that he be given access to the complete affidavits. The court then recognized that it must determine "whether the deletions are appropri-

ate or unnecessary, and whether the government had a legitimate secrecy interest in what it is that they have deleted." The government interposed its objection stating: "if the excised portions are revealed, it would undermine the investigation[. F]rom the face of the documents which the Court is now reviewing, the documents themselves reveal that any disclosure would threaten the status of witnesses and the effectiveness of the investigation."

Subsequently, the district court carefully proceeded through the affidavits and specifically ruled on the validity of each claim of secrecy. The court found that the deletion of information such as specific names and places was appropriate and permissible in light of the government's interest in protecting its sources. The court also approved the deletion of larger portions of texts of certain conversations on the ground that the information as a whole would reveal the identity of certain government sources. The appellant was permitted access to all other information.

The district court's approach to the question of "limited access" in this case was consistent with the guidelines set forth in *In re DeMonte.* The court respected the presumption of disclosure. The government was required to make specific objections before any deletions were finally approved.[3] The court then exercised its discretion, evaluating each of the proposed deletions in light of the government's secrecy claim. Its conclusion that the government's objections were proper and the deletions justified was not an abuse of discretion.[4]

## II

After providing the appellant "limited access" to the appropriate documents and

---

**2.** Note that this rationale would not apply to documents that are required by the statute, i.e., court orders or supporting affidavits.

**3.** On the facts of this case, the government's objection was sufficient. We leave open the possibility that in other circumstances a more extensive showing might be required.

**4.** We agree with the district court that the teaching of *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (mandating the disclosure of an informer's identity and communications in certain criminal cases) is not applicable to this civil contempt proceeding. *Cf. McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

hearing his arguments based on that information, the district court reaffirmed its finding that the government's electronic surveillance in this case was lawful. The appellant contests that conclusion on several grounds.

### A

The appellant first challenges the district court's determination that the original wiretap application was supported by probable cause.[5] Specifically, he questions the sufficiency of the affidavit submitted in support of the application. That affidavit incorporated information from a variety of sources: (1) confidential informants; (2) named informants; (3) consensual tape-recorded conversations; and (4) visual surveillance by federal agents. The appellant focuses on the portions of the affidavit based on information obtained from informants. He urges that the affidavit failed to establish that the informants were credible or their information reliable. *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

An affidavit such as this must be "tested and interpreted" by the courts "in a commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). Moreover it should be read as a whole. *Id.* Based on such a reading, we conclude that the district court's assessment of probable cause was well-founded.

■ Initially we observe that both the confidential and named sources recited information that they personally observed. Thus we do not confront the problem, noted in *Spinelli v. United States*, 393 U.S. at 416, 89 S.Ct. at 589, and *United States v. Roth*, 391 F.2d 507, 510 (7th Cir. 1967), of a declarant who may have received his information from another wholly unreliable source. *Compare United States v. Harris*, 403 U.S. 573, 581, 91 S.Ct. 2075, 2080, 29 L.Ed.2d 723

(1971). Rather, we must focus on the reliability of the informants themselves.

■ The district court was justified in finding the named informants credible. First, they were non-professional witnesses with no motive to falsify. Such persons may be treated as reliable even without a prior history of contributing information. *United States v. Wilson*, 479 F.2d 936, 940 (7th Cir. 1973); *see United States v. Dennis*, 625 F.2d 782, 790 (8th Cir. 1980). Second, the details of the intelligence they offered were confirmed by subsequent investigative sources, i.e., tape-recordings and visual surveillance. *See United States v. Vento*, 533 F.2d 838, 848 (3d Cir. 1976); *United States v. Hyde*, 574 F.2d 856, 863 (5th Cir. 1978). Finally, information supplied by these persons was "mutually reinforcing and corroborative." *United States v. Hyde*, 574 F.2d at 863.

Turning to the question of the reliability of the confidential informants, we find somewhat less compelling support in the affidavit. Although there are indications that these informants had previously given "correct information" to federal agents, those assertions are to some extent conclusory. Yet in the context of the affidavit as a whole, the information received from these persons was both verified by collateral sources and reinforced by information received from the named informants.[6] Relying on "a common-sense reading of the entire affidavit," *Spinelli v. United States*, 393 U.S. at 415, 89 S.Ct. at 588, the district court could have reasonably concluded that these persons were also reliable.

Because the court was justified in relying upon all the information in the affidavit, its probable cause determination was clearly sound.

### B

The appellant next contends that the government's affidavit failed to satisfy the requirement of 18 U.S.C. § 2518(1)(c) that the wiretap application include "a full and

---

**5.** Actually, the government filed two separate applications. The appellant focuses on the initial authorization, though, because the second application was simply an extension of it.

**6.** Thus we need not decide whether the isolated assertions regarding the previous reliability of the confidential informants were alone sufficient to credit their testimony.

complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." We also reject this claim.

In *United States v. Anderson*, 542 F.2d 428 (7th Cir. 1976), we indicated that the government's showing in this regard "must be reviewed in a 'practical and common-sense fashion.'" *Id.* at 431 (citation omitted). We noted that "'[t]o support a finding that normal investigative procedures are unlikely to be successful, we interpret the congressional directions as only requiring that there exist a factual predicate in the affidavit.'" *Id.* (citation omitted).

 In this case the government's affidavit stated such a predicate. It explained: (1) that certain prosecution tactics were precluded by the fear of informants to testify; (2) how the nature of the operation under investigation militated against the use of more conventional investigative techniques; (3) that the investigative procedures used in this case, i.e., tape-recordings and visual surveillance, proved to be inadequate means to develop necessary evidence; and (4) that there was a significant risk involved in continuing to rely upon informants. Thus the court's finding that section 2518(1)(c) was satisfied was proper.

The Ninth Circuit's decision in *United States v. Kalustian*, 529 F.2d 585 (9th Cir. 1975), upon which the appellant bases his argument, does not compel an opposite result. *Kalustian* teaches only that an "affidavit composed solely of conclusions unsupported by particular facts gives no basis for a determination of compliance with section 2518(1)(c)." *United States v. Spagnuolo*, 549 F.2d 705, 710 (9th Cir. 1977). In the present case, the government did make some factual showing.

### C

Finally, the appellant urges that the government failed to submit progress re-

ports on the dates required by the authorizing orders, thus rendering the interceptions invalid. This argument also fails.

 Even if the appellant's claim that the reports were not timely filed is true,[7] that does not automatically render the surveillance invalid. The authorizing statute does not require that such reports be filed. 18 U.S.C. § 2518(6). Rather, it relegates this matter to the discretion of the supervising judge. In the present case the reports were found to be sufficient by that judge. Thus they satisfied the condition of the authorizing order. *See United States v. Iannelli*, 430 F.Supp. 151, 156 (W.D.Pa. 1977).

 The district court, using the proper procedure, correctly found that the government's electronic surveillance of the appellant was lawful. Thus the appellant was required to testify. Accordingly, we affirm the order of the district court adjudging him in civil contempt.

---

7. The appellant does not dispute that the reports were prepared and filed. Rather, he bases his claim on the fact that the copies of the reports submitted by the government to the district court were undated. The government, however, contends that the original reports, on file under seal with the judge who issued the wiretap orders, are properly dated. Because of our treatment of this claim, we need not resolve this factual dispute.