[No. 9530-7-I. Division One. December 8, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. PHILLIP JAY PLATZ, *Appellant.*

*Phillip Jay Platz,* pro se, and *Timothy McGarry* of *Eastside Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Stephen Moore, Deputy,* for respondent.

SWANSON, J.—Phillip Jay Platz was convicted by a jury of first degree murder. He appeals alleging: (1) his prosecution by information violated his constitutional rights; (2) a delayed prosecution violated his due process rights; (3) the court erred in admitting a tape recording in violation of RCW 9.73.130; and (4) the court erred in admitting evidence that defendant usually carried a knife.

On April 10, 1979, defendant Platz visited a business in Seattle operated by undercover police officers to sell some property. During a discussion there with Officer Vegas, Platz stated he had killed two people. Based on these

statements and a subsequent investigation to assure accuracy, Detective Karban applied to a superior court judge for authorization to tape–record a conversation between Platz and Vegas. The judge granted the application. Platz returned to the business on April 24, 1979, and discussed with Officer Vegas his killing of a man. The audio–video tape of the conversation was presented at trial. The undercover operation ended in January 1980. The prosecution filed murder charges against Platz on June 13, 1980, for the June 21, 1978, stabbing death of Nicolas Delangey.

One other incident is relevant to the issues on appeal. Teresa Brown testified over objection that Platz was in the habit of carrying a knife.

Platz first argues in his separate pro se brief that his prosecution by information violated the United States Constitution.

■ Article 1, section 25 of Washington's constitution, RCW 10.37.015, and CrR 2.1 authorize the use of an information. The United States Supreme Court has consistently held prosecution by information constitutional. *E.g., Beck v. Washington,* 369 U.S. 541, 545, 8 L. Ed. 2d 98, 82 S. Ct. 955 (1962). Platz' prosecution by information was constitutional.

Platz also claims his due process rights were violated because the prosecution delayed in filing charges.

■ The constitutional analysis for pre–prosecution delay involves two steps. At the outset, we note pre–prosecution delay does not violate the right to a speedy trial provided by the Sixth Amendment. *United States v. Lovasco,* 431 U.S. 783, 788, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977). Statutes of limitation provide the primary protection against pre–prosecution delay, but the Fifth Amendment's due process clause provides limited protection against oppressive pre–prosecution delay. *Lovasco,* at 788–89. To dismiss a case because pre–prosecution delay violated due process, the defendant must first show he was prejudiced by the delay. *Lovasco,* at 790. If the defendant establishes prejudice, the court takes the second step and

considers reasons for the delay as well as the prejudice to the defendant. *Lovasco*, at 790.

"Prejudice . . . must be specially demonstrated and cannot be based upon speculation." *State v. Haga*, 8 Wn. App. 481, 489, 507 P.2d 159 (1973). Platz contends he was prejudiced by the unavailability of a potential witness, the loss of memory of a second witness, and the filing of property crime charges against him during the delay that were used to impeach him. We agree with the State's assertions that the missing witness' testimony would have been cumulative and corroborative and the second witness' testimony had not significantly changed from November 1978 to the time of trial.

Platz' claim that he was prejudiced because during the delay he was charged with other crimes is too speculative. We are persuaded by our review that Platz failed to demonstrate prejudice by any alleged delay. Moreover, even assuming Platz established prejudice, the reason for the delay here—to determine through a special inquiry proceeding whether a key witness would be granted immunity—justified delay. Platz' due process rights were not violated by pre–prosecution delay in filing charges.

The defendant next argues that the police failed to obtain proper authorization to record his conversation with Officer Vegas. We disagree. The recording was proper under RCW 9.73.090 and 9.73.130.

The provisions of RCW 9.73 are designed to protect "the privacy of individuals from public dissemination, even in the course of a public trial, of illegally obtained information." *State v. Wanrow*, 88 Wn.2d 221, 233, 559 P.2d 548 (1977). RCW 9.73.090, however, grants law enforcement officers authority to record conversations to which they are a party provided they conform to specified safeguards. The officer must obtain prior authorization from a judge or magistrate. Under RCW 9.73.090, the judge shall approve the recording only if there is probable cause to believe the nonconsenting party has committed a felony. As an additional protection, under RCW 9.73.130(3)(f), the officer's

application for authority to record must include:

> A particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ[.]

Platz argues Officer Karban's application for authorization to record did not satisfy the requirements of RCW 9.73-.130(3)(f) because the officer could testify to the conversation thereby obviating the necessity for recording.

██ To make RCW 9.73.130(3)(f) meaningful, it must be interpreted as requiring something less than a showing of absolute necessity to record to acquire or preserve evidence. *State v. Kichinko*, 26 Wn. App. 304, 311, 613 P.2d 792 (1980). If the application for authorization from the officer required such a showing, the provision could never be utilized because under the statutory scheme an officer must always be a party to the communication and, therefore, could always testify about it. The recording would never be "necessary" to acquire evidence. In *Kichinko* at page 312 the court found that an application for authorization to record containing a statement that proof of a particular mental state is needed to convict for a crime and that "unless it can be shown exactly what was said, the evidence . . . would be inexact, conflicting and confusing" was sufficient to show other normal investigative procedures reasonably appear unlikely to succeed.

The federal courts have also refused to require a showing of absolute necessity under a similarly worded federal statute.[1] The federal courts have concluded that the provi-

---

[1]18 U.S.C. § 2518(3) (1970) provides in pertinent part:

Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications . . . if the judge determines on the basis of the facts submitted by the applicant that—

. . .

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

sion must be interpreted in a "common sense fashion," *United States v. Cifarelli,* 589 F.2d 180, 183 (5th Cir. 1979); *United States v. Martinez,* 588 F.2d 1227, 1231 (9th Cir. 1978), and that the affidavit need only show a "factual predicate." *In re DeMonte,* 674 F.2d 1169, 1174 (7th Cir. 1982); *Cifarelli,* at 183. In addition, the federal courts have recognized that the authorizing judge has "considerable discretion to determine whether an adequate showing of necessity has been made", *United States v. Martin,* 599 F.2d 880, 886–87 (9th Cir. 1979), and his approval provides support for finding the affidavit sufficient. *Kilgore v. Mitchell,* 623 F.2d 631, 635 (9th Cir. 1980).

The application for authorization to record submitted in this case included a number of factual statements relating to the requirements of RCW 9.73.130(3)(f). The application stated that the homicide of Delangey had gone unsolved for over 9 months. The application also indicated that other investigative procedures were used. It mentioned the police had recovered two Camel Filters cigarette butts from the scene of Delangey's death and noted Platz smoked that brand, and determined Platz' fingerprints were on the doorframe of Delangey's hotel room. Additionally, the application stated:

> Absent a recording, this case could be reduced to a one–on–one swearing contest, making resolution of exactly what was said by whom extremely difficult.

We conclude that the application for authorization submitted in this case included statements of fact sufficient to show other normal investigative procedures have been tried and failed or reasonably appear unlikely to succeed. The application is similar to the one in *Kichinko* with respect to showing the recording is needed to avoid conflicting evi-

---

It appears obvious from the wording of the statutes that the state Legislature borrowed generously from the federal provision. We note, however, that the federal statutory scheme concerns wiretapping where neither party consents to the recording. In such circumstances the need for limiting recording is even greater than where one party consents to the recording as required by Washington's statute.

dence. The statements establish a factual predicate for RCW 9.73.130(3)(f) requirements. Finally, it is significant that both the authorizing judge and trial court judge considered the statements sufficient. The statutory safeguards to ensure protection of individuals' privacy were followed here. The application to record satisfied the requirements of RCW 9.73.130(3)(f).

Platz finally argues witness Teresa Brown's testimony that Platz usually carried a knife and never left the house without it constitutes evidence of other wrongs and therefore is inadmissible to prove character under ER 404(b).[2]

▮ We uphold the trial court's decision to admit the testimony for a number of reasons. First, Platz failed to object to the testimony on that basis at trial. He merely objected to the evidence as irrelevant. The evidence is relevant under ER 401.[3] It is clearly probative of whether Platz could have inflicted the victim's stab wounds. Secondly, the evidence is admissible under ER 404(b). The evidence did not go to show Platz' character which the rule proscribes. In addition, ER 406 explicitly recognizes evidence of habit is admissible. The testimony about Platz' propensity to carry a knife is within McCormick's definition of habit. "'A habit . . . is the person's regular practice of meeting a particular kind of situation with a specific type of conduct . . .'" 5 K. Tegland, Wash. Prac., *Evidence* § 128, at 318 (2d ed. 1982). The trial court properly admitted Brown's testimony. We find no error.

---

[2]ER 404(b) provides: "**Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[3]ER 401 states:
"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

352

The judgment is affirmed.

ANDERSEN, C.J., and CORBETT, J., concur.

Reconsideration denied February 1, 1983.

Review denied by Supreme Court April 21, 1983.