[No. 50551–9. En Banc. August 9, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANCISCO R. CALDERON, *Appellant.*

*Eric J. Nielsen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Robert S. Lasnik, Senior Deputy,* for respondent.

Dimmick, J.—Appellant Calderon appeals his convictions for second degree burglary and criminal trespass. The question certified to us by the Court of Appeals is:

Whether a defendant who is not yet 18 at the time an offense is committed but who is 18 when charges are filed has a right under RCW 13.04.030 to be tried as a juvenile rather than as an adult.

We answer no. We hold that juvenile court jurisdiction ends when a youth becomes 18, unless, prior to that birthday, jurisdiction has been extended pursuant to law. We also find no evidence that juvenile court jurisdiction was avoided by intentionally or negligently delaying the filing of charges against appellant. Accordingly, we uphold superior court jurisdiction to try appellant for his crimes and affirm the convictions.

In February and March of 1981, police investigated two Vashon Island burglaries. Fingerprints were recovered from both homes. A primary suspect in at least one case, John Pope, was a relative of one of the burglary victims and an escapee from Green Hill Correctional Center.

Pope was returned to custody in March and was interviewed by a police detective. During that interview, Pope disclosed that he had seen some items reported missing in the two Vashon Island burglaries in a motel room being used by appellant and another person. Thereafter, the detective submitted Pope's fingerprints to the identification lab, requesting expedited comparison along with previous submissions from a group of burglaries then being investigated. The prints were verified in approximately 2 weeks.

Appellant, also an escapee from Green Hill, was apprehended in April. Upon learning of the arrest, the detective submitted a copy of appellant's fingerprints to the identification lab to be matched with prints taken from the two Vashon Island burglaries. No request was made for expediting the report. As a result of a backlog, the prints were not verified until late September. In the meantime, on August 1, 1981, appellant became 18 years old. Consequently, charges against appellant were filed in superior court rather than juvenile court. Appellant was convicted and given a deferred sentence, requiring limited jail time and compliance with court ordered conditions.

Prior to trial on the charges, appellant moved to dismiss the information, arguing that the delay between the alleged commission of the crimes and the filing of an information violated due process because it denied him the benefits of juvenile court jurisdiction. He now contends, in addition, that the superior court had no jurisdiction to try him for an offense he committed as a juvenile.

We first consider appellant's argument that RCW 13.04-.030 gives the juvenile court, not the superior court, exclusive original jurisdiction over a crime committed by a person less than 18. He concedes that under *State v. Ring,* 54 Wn.2d 250, 339 P.2d 461 (1959), a defendant 18 or older at the time of trial may be properly tried in superior court even though the crime was committed before the accused was 18. Appellant contends, however, that the major revision of the juvenile code in 1977 requires reinterpretation

of the juvenile court's jurisdictional statute. *See* Laws of 1977, 1st Ex. Sess., ch. 291. He suggests that the Legislature intended to base juvenile court jurisdiction on the offender's age at the time the crime was committed rather than on the offender's age when proceedings are instituted.

The jurisdictional statute in question provides the county juvenile courts with exclusive original jurisdiction over, *inter alia,* all proceedings "[r]elating to juveniles alleged or found to have committed offenses . . ." RCW 13.04.030(6). "Juvenile" is defined as any individual who is under the chronological age of 18 and who has not been previously transferred to adult court. RCW 13.40.020(10). The Legislature has, however, authorized the juvenile court to retain jurisdiction over a juvenile beyond 18 under certain circumstances. When proceedings are pending to adjudicate a juvenile offense, the juvenile court may, prior to the juvenile's 18th birthday, enter an order extending jurisdiction beyond that birthday. RCW 13.40.300(1)(c).

We cannot agree that this statutory scheme was intended to abrogate long–standing case law holding that the juvenile court loses jurisdiction over the cause if, prior to a hearing on the merits, the juvenile becomes 18. *State v. Kramer,* 72 Wn.2d 904, 435 P.2d 970 (1967), *cert. denied,* 393 U.S. 833 (1968). In construing statutes, we presume that the Legislature is familiar with past judicial interpretation of its enactments. *Glass v. Stahl Specialty Co.,* 97 Wn.2d 880, 887, 652 P.2d 948 (1982). We will not assume that the Legislature would effect a significant change in legislative policy by mere implication. *In re Marriage of Little,* 96 Wn.2d 183, 634 P.2d 498 (1981). The prior interpretation of juvenile jurisdiction was not explicitly changed with the 1977 law. In fact, that interpretation is recognized in those provisions that authorize extension of established jurisdiction where necessary to aid the juvenile court's authority. *See* RCW 13.40.300. We conclude, therefore, that jurisdiction over offenses committed by a juvenile is to be determined at the time proceedings are instituted against

the offender. Jurisdiction in the juvenile court ends when the youth becomes 18, unless jurisdiction has been extended under the authority of RCW 13.40.300.

In the present case, charges were filed against appellant after his 18th birthday. He argues, however, that the delay in charging was either deliberate or negligent, and resulted in unconstitutionally denying him the benefits of adjudication in the juvenile justice system.

Preaccusatorial delay in bringing charges may violate due process. *United States v. Lovasco,* 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977). The defendant must show that he was prejudiced by the delay and, in making its due process inquiry, the court must consider the reasons for the delay as well as the prejudice to the accused. *Lovasco,* at 790; *State v. Platz,* 33 Wn. App. 345, 655 P.2d 710 (1982).

In *State v. Hodges,* 28 Wn. App. 902, 626 P.2d 1025 (1981), the court found that a delayed arraignment resulting in loss of juvenile court jurisdiction was prejudicial and a violation of due process unless the State was able to justify the delay as reasonable. The State attempts to distinguish *Hodges* by relying on *State v. Darden,* 30 Wn. App. 460, 635 P.2d 760 (1981), *rev'd on other grounds,* 99 Wn.2d 675, 663 P.2d 1352 (1983), which characterized *Hodges* as an "arraignment" case, and suggested in dicta that a delay in bringing charges would not be found prejudicial.

Jurisdiction in juvenile court undoubtedly offers an offender numerous benefits, including avoiding the stigma of an adult criminal conviction and receiving less harsh penalties. When, as here, a youth commits an offense discovered 5 months before his 18th birthday, yet charges are not filed until after that birthday, a very real concern is raised about the preaccusatorial delay. The juvenile will have been denied adjudication in juvenile court, or, at the very least, will have lost the opportunity to argue against declination from juvenile jurisdiction. *See* RCW 13.40.110. We note that appellant's criminal history[1] makes it very

---

[1]Appellant's prior criminal record includes first degree robbery, second degree

unlikely that any juvenile court would have retained jurisdiction over these offenses. Nevertheless, we will assume that when a delay in bringing charges prevents the juvenile court from making the jurisdictional decision, the offender has carried his burden of showing the minimal prerequisite of prejudice. *Accord, In re S.V.,* 296 N.W.2d 404 (Minn. 1980); *State v. Scurlock,* 286 Or. 277, 593 P.2d 1159 (1979); *State v. Avery,* 80 Wis. 2d 305, 259 N.W.2d 63 (1977).

Simply establishing prejudice is not enough, however. To find a due process violation, the court must also consider the State's reasons for the delay. *Lovasco.* If the State is able to justify the delay, the court must undertake a further balancing of the State's interest and the prejudice to the accused. *See United States v. Saunders,* 641 F.2d 659 (9th Cir. 1980). Ultimately, the test suggested by the United States Supreme Court is "whether the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions". *Lovasco,* at 790.

A deliberate delay to circumvent the juvenile justice system violates due process. *See, e.g., State v. Scurlock, supra.* It has been suggested that negligently failing to bring charges promptly may also establish a constitutional violation. *Lovasco,* at 795 n.17; *State v. Avery, supra.* In general, however, courts find that delays to allow continued investigation of the crime or other related criminal activity are justified, citing broad prosecutorial discretion in matters of charging as the policy reason for not formulating strict rules with regard to the proper time to bring a charge. *See, e.g., Lovasco.*

In appellant's case, the trial court conducted a full evidentiary hearing before concluding that the delay was not deliberate. The court gave careful consideration to the claim of negligent delay, but found that the State had car-

---

burglary, first degree criminal trespass, second degree theft, second degree escape, counterfeiting, taking a motor vehicle without permission, vehicle prowling, and first degree arson.

ried its burden of justifying the delay. We agree. The lab supervisor testified that the backlog resulted from several factors. A number of serious homicide cases were then being investigated. The lab had also been assigned all robbery cases previously handled by the Federal Bureau of Investigation's lab. In addition, one employee was on sick leave during the backlog period. The supervisor explained that a priority system had been adopted to reduce the backlog. First priority was given to homicide cases and other serious crimes against the person, with fairly low priority to property crimes such as burglaries. She testified that she had not been aware of appellant's age when his prints were analyzed. The detective testified that since he did not have probable cause, and as he had pursued the investigation against appellant on a hunch, there was no reason to alter the normal progress of verifying the prints through the lab's priority system.

With a mounting backlog of cases, the identification lab reasonably implemented a priority system to process fingerprint verifications. Absent extraordinary circumstances, it is appropriate that juvenile offenses be managed in the same manner as are adult crimes. We are reluctant to interfere with standard investigatory procedures by requiring special treatment for juvenile suspects.

While we could conceive of a case in which an offender could successfully argue that the prejudice resulting from the loss of juvenile court jurisdiction outweighed the State's reasons for the charging delay, this is not that case. The State has rebutted the claim that the delay was deliberate or negligent by showing a justified investigatory delay. Charges were promptly brought once the fingerprint verification was reported. As appellant was then 18, charges were properly filed in superior court. The State's action here does not violate our "fundamental conceptions of justice".

Appellant's convictions are affirmed.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.